```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
JOSEPH WEINFELD, LIANA X              :
KNIJNIKOV A, ISAAC WEISS, ROBERT      :
FRANK, YEHUDAH NUSSBAUM,              :
MOSES STEINMETZ, HANNAH               :          **MEMORANDUM & ORDER**
COHEN, CARL ISAAC, ALBERT             :          12-CV-6395 (DLI)(MDG)
ISAAC, GERALD B. KATZ, SOLOMON        :
SCHLAFRIG, JOSEF KOHN, JACOB          :
KELLNER, DAVID GOLDSTEIN,             :
MICHAEL FRIEDMAN, DAVID               :
SCHWARTZ, and CONGREGATION            :
BETH JOSEPH, Derivatively on behalf of:
PRECIOUS MINERALS MINING AND          :
REFINING CORP.,                       :
                                      :
                    Plaintiffs,       :
                                      :
        -against-                     :
                                      :
BILL L. MINOR, JOHN H. REYNOLDS,      :
and WALTER A. MARTING, Jr.,           :
                                      :
                    Defendants,       :
and                                   :
                                      :
PRECIOUS MINERALS MINING AND          :
REFINING CORP., a Nevada Corporation, :
                                      :
                    Nominal Defendant.:
----------------------------------------------------------------- x
```
**DORA L. IRIZARRY, United States District Judge:**

      Plaintiffs filed the instant action against Defendants Bill Minor, John H. Reynolds, and Walter A. Marting, Jr. ("Defendants") and nominal defendant, Precious Mineral Mining and Refining Corporation ("PMMR" or the "Corporation"), alleging that Defendants violated duties they owed to PMMR as officers and/or directors. Presently before the Court is Defendants' motion to transfer the case to the United States District Court for the District of Nevada ("District of Nevada"). For the reasons set forth below, Defendants' motion is granted.

# BACKGROUND[1]

## I. The Parties

Plaintiffs, who are residents of Brooklyn, New York, filed this shareholder derivative action on behalf of PMMR, a privately-held Nevada corporation whose assets are mining claims located in Nevada. (*See generally* First Amended Complaint ("Am. Compl."), Doc. Entry No. 8.) PMMR's official office is in Pennsylvania. (*Id.* ¶ 35.) This suit against three of PMMR's officers and/or directors, Bill Minor, John H. Reynolds, and Walter A. Marting, Jr., alleges breaches of fiduciary duties owed to PMMR, waste of corporate assets, self-dealing, unjust enrichment, usurpation of corporate opportunities, abuse of control, and ultra vires actions. (*See generally id.*)

Mr. Minor, a citizen of Pennsylvania, is currently President of PMMR. (*Id.* ¶ 32.) He has been an officer of the Corporation, holding various titles, since he founded it in 1995. (*Id.* ¶¶ 2, 32.) Mr. Reynolds is a board member of PMMR and a citizen of California. (*Id.* ¶ 33.) Mr. Marting was a board member of PMMR during the relevant time of the alleged grievances and is a citizen of Nevada. (*Id.* ¶ 34.)

PMMR has approximately 1200 shareholders throughout the United States, Canada and the Caribbean, with approximately 170 shareholders in the Eastern District of New York. (*See id.* ¶ 4.) Mr. Minor is the largest single shareholder of the Corporation. (*Id.* ¶ 28.) PMMR's main asset is its mining rights in Lyon County, Nevada. (*Id.* ¶ 4.) PMMR's mines a product from this source and sells it under the name Orykta. (*Id.* ¶ 1.)

---

[1] The following facts are from the First Amended Complaint and assumed to be true for the purpose of this Order.

## II. Relevant Facts and Procedural History

From 1999 through 2001, Mr. Minor offered and sold PMMR shares to investors throughout the United States and Canada. (Am. Compl. ¶ 3.) In August 2001, he traveled to Brooklyn, New York for a meeting with potential investors in an attempt to sell PMMR shares to them. (*Id.* ¶ 3.) Plaintiffs allege that over the subsequent decade, Defendants engaged in the systematic mismanagement of the Corporation, refused to provide information to which shareholders are entitled, and failed to live up to their basic fiduciary duties. (*See generally id.*) Plaintiffs contend that Defendants, *inter alia*: (1) never produced a single audited financial statement for PMMR, (2) failed to act to prevent corporate loss, (3) unjustly enriched themselves at the expense of the Corporation by approving exaggerated compensation packages, (4) issued a false unaudited financial statement, and (5) acted without proper shareholder consent in executing material transactions. (*Id.* ¶ 7-18.)

Plaintiffs also allege that Mr. Minor separately violated his fiduciary duties apart from the other two defendants. First, Plaintiffs assert that Mr. Minor fraudulently told several shareholders, at various times over a period of many years, that a large contract for the sale of Orykta to the Chinese government either had been signed, or would be imminently, all the while knowing that to be false. (*Id.* ¶ 19.) Plaintiffs add that Mr. Minor failed in his fiduciary duty of care by failing to act as any "reasonable person" would with regard to sales leads. (*Id.* ¶ 50.) Lastly, Plaintiffs accuse Mr. Minor of repeatedly lying to several shareholders about an imminent sale of the Corporation's product to China. (*Id.* ¶¶ 59-64.) Plaintiffs add that Mr. Minor met with a group of shareholder investors and their former attorney in Brooklyn, New York in August 2008, where Mr. Minor repeated the same falsehood about a forthcoming contract between PMMR and China. (*Id.* ¶ 65.)

## DISCUSSION

### I. Transfer of Venue Under § 1404(a)

A district court may transfer a civil action to any other district where the action might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). When making a motion to transfer venue, "[t]he party requesting transfer carries the 'burden of making out a strong case for transfer.'" *Audiovox Corp. v. S. China Enter., Inc.,* 2012 WL 3061518, at *7 (E.D.N.Y. July 26, 2012) (quoting *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.,* 599 F.3d 102, 114 (2d Cir. 2010)); *see also In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 168 (E.D.N.Y. 2006). At the same time, "motions for transfer lie within the broad discretion of the district court and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

To determine whether a motion to transfer venue should be granted, the Court must apply a two-pronged test: "(A) whether the action could have been brought in the proposed forum; and (B) whether the transfer would 'promote the convenience of parties and witnesses and would be in the interests of justice.'" *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012) (quoting *Clarendon Nat'l Ins. Co. v. Pascual,* 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000)). In this case, both prongs of the requisite two-part inquiry weigh in favor of transfer.

With regard to this first prong, the parties do not dispute that this action could have been brought in the District of Nevada. Moreover, the Nevada Supreme Court recently held that Nevada courts properly can exercise personal jurisdiction over nonresident officers and directors who are alleged to have directly harmed a Nevada corporation. *Consipio Holding, BV v.*

*Carlberg*, 282 P.3d 751, 756 (Nev. 2012). Therefore, the remaining inquiry here is whether the convenience of the parties and witnesses, and the interests of justice would support the transfer.

This second, case-specific analysis generally involves the consideration of the following non-exhaustive list of factors, none of which is dispositive: (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *See Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006).

### a. Convenience of the Witnesses

Convenience of the witnesses is one of the most important considerations when deciding a motion to transfer venue. *See Schwartz v. Marriot Hotel Serv., Inc.*, 186 F. Supp. 2d 245, 249 (E.D.N.Y. 2002); (citation omitted); *Nieves v. American Airlines*, 700 F. Supp. 769, 772 (S.D.N.Y. 1988) (citation omitted). "The convenience of non-party witnesses is accorded more weight than that of party witnesses." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 546 (S.D.N.Y. 2008) (quoting *Indian Harbor Ins., Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005)).

Although Defendants argue that the facts favor transfer, their moving brief fails to identify potential witnesses and to describe their intended testimony. *See MBCP Peerlogic LLC v. Critical Path, Inc.*, 2002 WL 31729626, at *3 (S.D.N.Y. Dec. 5, 2002) ("a motion to transfer usually requires that 'the movant must support the transfer application with an affidavit

5

containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony.") (citing *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 6 F. Supp. 2d 203, 208 (S.D.N.Y. 1998)). Nonetheless, in cases where, as here, Plaintiffs allege that certain documents contained false or misleading statements, the key witnesses are frequently "officers and employees of [the issuer] who participated in drafting or distributing [those] statements." *In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953, at *4 (S.D.N.Y. May 12, 2003) (noting that litigation related to statements made in three quarterly reports, a press release, and two conference calls).

The facts giving rise to this action lie within the knowledge of the officers and employees of PMMR who participated in creating and disseminating the allegedly false and misleading statements. None of the three defendants, who make up PMMR's board of directors, reside within the Eastern District of New York, while one of the defendants does reside within the District of Nevada. (*See* Am. Compl. ¶¶ 32-34 (noting Weinfeld is a citizen of Pennsylvania, Reynolds is a citizen of California, and Marting is a citizen of Nevada).) This weighs in favor of transfer.

### b. Convenience of the Parties

Second, the convenience of the parties also weighs in favor of transfer. In analyzing the convenience of the parties, "[t]he logical starting point is a consideration of [their] residence." *U.S. Fidelity & Guar. Co. v. Republic Drug Co.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992). As noted, none of the three defendants reside within the Eastern District of New York, while one of the defendants does reside within the District of Nevada.

Plaintiffs, however, assert that the Eastern District of New York is more convenient for

them. (*See* Mem. of Law in Opp. to Defs. Motion to Dismiss the First Am. Compl. ("Pls. Mem. In Opp."), Doc. Entry No. 18, at 9.) Assuming that Plaintiffs reside in the Eastern District of New York, "this is a derivative action brought on behalf of [PMMR], and, thus, the importance of [individual shareholder] participation is minimal. *See Seinfeld v. Bartz*, 2001 WL 611295, at *3 (S.D.N.Y. June 5, 2001); *cf. Adair v. Microfield Graphics, Inc.,* 2000 WL 1716340, at *2 (S.D.N.Y. Nov. 16, 2000) (holding that "the residence of a class representative is often a mere happenstance, which may be discounted by a court when weighing transfer factors"). Additionally, when plaintiffs do not have personal knowledge about the disputed issues in the case, "it is unlikely that their participation will involve lengthy testimony." *Adair*, 2000 WL 1716340, at *2 (finding that the convenience of the parties in a class action suit favored defendants).

Again, the facts giving rise to this action lie primarily within the knowledge of the officers and employees of PMMR. The Court has noted only one instance in Plaintiffs' complaint where a named plaintiff is specifically highlighted as having personal knowledge of a purported wrongdoing by Defendants. (*See* Am. Compl. ¶ 41.) (alleging that plaintiff Hannah Cohen requested information from Mr. Minor in April 2012, but has yet to received it). The convenience of the parties weighs slightly in favor of transfer. *See Seinfeld*, 2001 WL 611295 at *3 (transferring venue in derivative action).

    **c. Location of Relevant Documents and Relative Ease of Access to Sources of Proof**

Third, the Court does not have a clear indication whether the documents pertaining to Defendants' allegedly false or misleading statements are maintained in the District of Nevada or at PMMR's official office in Pennsylvania. There is no indication that relevant documents are maintained within the Eastern District of New York. This factor weighs in favor of transfer.

### d. Locus of Operative Facts

Fourth, the locus of operative facts does not weigh in favor of venue in New York. Courts within the Second Circuit have held that misrepresentations or omissions occur "where the misrepresentations are issued or the truth is withheld, not where the statements at issue are received." *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006) (quoting *Adair*, 2000 WL 1716340, at *2); *see also In re Global Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *6 (S.D.N.Y. Sept. 18, 2008). Although Plaintiffs assert that a substantial portion of the alleged transactions and wrongs occurred within this jurisdiction, the First Amended Complaint includes just two references to New York. (*See* Am. Compl. ¶¶ 25, 65.) In these two references, Plaintiffs point to the two trips by Mr. Minor to New York over an almost ten year period, but do not allege that the other Defendants ever visited New York. (*See id.*) Based on the complaint, all of Defendants' allegedly misleading statements at issue, with the exception of the alleged misstatement that occurred on Mr. Minor's second visit to New York, originated from outside of New York. Although the record is not detailed enough for the Court to determine the precise location of these operative facts, it is clear that it is not New York.

### e. Availability of process to compel the attendance of unwilling witnesses

Fifth, the parties may face potential subpoena difficulties whether the Court grants or denies the instant motion. As there are no allegations that any particular witnesses are unwilling to testify should this matter proceed to trial, this factor is neutral in the Court's analysis.

### f. Relative Means of the Parties

Sixth, there is no evidence as to the relative means of the parties. Plaintiffs argue that their means "will not allow them the inconvenience to attend hearings in Nevada." (Pls. Mem. In Opp. at 9.) Plaintiffs do not state, in any detail, why they would be unable to meet this

expense or that doing so would result in undue hardship for them. *See Bombardier Capital, Inc. v. Solomon*, 2000 U.S. Dist. LEXIS 16711, 2000 WL 1721138, at *4 n.11 (S.D.N.Y. Nov. 17, 2000) (noting that a party arguing against transfer on these grounds must offer documentation that transfer would be unduly burdensome). Accordingly, this factor does not favor either side.

### g. Forum's Familiarity with the Governing Law

Regardless of whether this Court transferred this case, any choice-of-law analysis will be conducted under New York choice-of-law rules. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 ("[I]n [diversity] cases . . . , the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue."). Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Allstate Ins. Co.*, 81 N.Y.2d 219, (1993). This, in turn, requires examining the substantive rules of New York and Nevada to determine whether the difference between them possibly would have a significant effect on the outcome of the case. *See, e.g., AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*, 726 F. Supp. 2d 307, 313 (S.D.N.Y. 2010).

Neither party provided any briefing on the choice-of-law issue presented in this case, and, therefore, it would be premature to determine at this stage which state's substantive law will apply. Nevertheless, regardless of where the case proceeds, its resolution will require a comparison between the laws of New York and Nevada for the purpose of determining whether a conflict exists. It will then require the application of New York's choice-of-law principles to resolve any conflict. Either court can perform these tasks. Accordingly, the forum's familiarity with the governing law is a neutral factor in this analysis.

### h. Weight Accorded the Plaintiffs' Choice of forum

As to Plaintiffs' choice of the Eastern District of New York as a forum, this is given little weight in a derivative action. *See Scheinbart v. Certain-Teed Prods. Corp.*, 367 F. Supp. 707, 711 (S.D.N.Y. 1973) ("In a derivative action, however, the weight given plaintiff's choice of forum is weakened considerably because the plaintiff is only one of hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts.") (internal quotation omitted); *Winston v. MGM*, 71-5312, 1972 U.S. Dist. LEXIS 14698, at *6-7 (S.D.N.Y. Mar. 13, 1972) ("While this factor must be considered in any transfer motion, it is of diminished importance in a derivative suit."). In addition, a plaintiff's forum selection is entitled to less deference where, as here, the forum has zero, or little, substantive ties to the litigation. *Rubinstein v. Skyteller, Inc.*, 48 F. Supp. 2d 315, 325 (S.D.N.Y. 1999) ("This deference [to plaintiff's choice of forum] is entitled to less consideration where, as here, the forum chosen has no substantive ties to the litigation."). This factor, therefore, does not disfavor transfer.

### i. Trial Efficiency and the Interest of Justice

Finally, consideration of trial efficiency and in the interests of justice, based on the totality of the circumstances, weigh in favor of transfer. As the above analysis demonstrates, this district has little connection to this action. Indeed, the First Amended Complaint only mentions New York twice. Rather, the "center of gravity" of this litigation is either Nevada or Pennsylvania. *See Bombardier Capital Inc. v. Solomon*, 2000 WL 1721138, at *2 (S.D.N.Y. Nov. 17, 2000) ("The core determination under Section 1404(a) is the center of gravity of the litigation.") (citation omitted).

After weighing the factors set forth above, the Court finds that transfer is warranted.

Plaintiffs have failed to show that this case has any fundamental connection to the Eastern District of New York. By contrast, there are several factors that suggest transfer to the District of Nevada, where PMMR is incorporated, one of the three defendants resides, and where PMMR's sole assets exist, is appropriate.

## II. Transfer of Venue Under § 1406(a)

As an alternative to 28 U.S.C. § 1404(a), 28 U.S.C. § 1406(a) provides: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). The Second Circuit has held that § 1406(a) permits courts to transfer in interest of justice whenever either personal jurisdiction or venue is improper. *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 79 (2d Cir. 1978); *see also Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005) (discussing § 1406(a); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000) (citing *Corke* and recognizing propriety of § 1406 transfer to cure lack of personal jurisdiction even when venue proper).

The Court has serious reservations that Plaintiffs' have made a *prima facie* showing that this Court has personal jurisdiction over all three defendants.[2] *See Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists."); *Penguin Gr. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) ("A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."). In order to establish personal jurisdiction over a foreign defendant under New York law, a

---

[2] Defendants also moved to dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(2) for a lack of personal jurisdiction.

11

plaintiff must "demonstrate either that [the defendant] was 'present' and 'doing business' in New York within the meaning of [CPLR] § 301, or that [the defendant] committed acts within the scope of New York's long-arm statute, [CPLR] § 302." *Schultz v. Safra Nat. Bank of New York*, 377 Fed. Appx. 101, 102 (2d Cir. 2010).

For example, with regard to Plaintiffs' contention that Defendants are subject to New York's general jurisdiction under CPLR § 301, the Court is mindful that the Supreme Court's recent decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) calls into question the current scope of New York's general jurisdiction statute. *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 n.2 (2d Cir. 2014) ("[W]e note some tension between *Daimler's* 'at home' requirement and New York's 'doing business' test."). The *Daimler* Court held that "[a] court may assert general jurisdiction over foreign (sister-state or foreign-country) [defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 134 S. Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 131 S. Ct. at 2853. Here, the evidence in the record shows that none of the defendants are citizens of New York, and therefore would not be "at home" in New York or subject to its general personal jurisdiction. Similarly, the Court has serious reservations about whether Plaintiffs could establish jurisdiction under CPLR § 302, New York's "long-arm" statute, which provides only specific jurisdiction over a non-domiciliary defendant arising out of particular acts purposefully targeted towards New York. *Roe v. Arnold*, 502 F. Supp. 2d 346, 350 (E.D.N.Y. 2007).

The apparent validity of Defendants' challenge to this Court's personal jurisdiction over

them only buttresses this Court's decision to transfer this case. The Second Circuit has held that "[c]ourts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 435 (2d Cir. 2005). The Court believes that the interest of justice merit the exercise of such discretion in this case.

## CONCLUSION

The Court finds that the venue factors as applied to the instant action demonstrates that the District of Nevada is a superior forum for this litigation. Therefore, Defendants' motion to transfer venue is hereby granted. The Clerk of the Court is directed to transfer this case to the District of Nevada.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2014

/s/
DORA L. IRIZARRY
United States District Judge